**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DONALD E. SMITH and KAREN L. SMITH,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CASE NUMBER:  09-381** |
| | ) | |
| **FIRST AMERICAN MORTGAGE TRUST** | ) | |
| **a/k/a, d/b/a NXTLOAN.COM, Corp,** | ) | **JURY TRIAL DEMANDED** |
| **M&T BANK,  and 1ST CONTINENTAL** | ) | |
| **MORTGAGE, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>FIRST AMENDED COMPLAINT</u>**

1.     NOW COME the Plaintiffs and as their First Amended Complaint against Defendants state as follows:

**JURISDICTION**

2.     This action includes claims which arise under the statutes of the United States and this Court's jurisdiction is conferred by 28 U.S.C. § 1331. Plaintiffs also make claims under Alabama Law and this court has jurisdiction over these claims pursuant to 28 U.S.C. § 1367.

**SUMMARY OF CLAIMS**

3.     This is a predatory lending case. In 2000 the U.S. Department of Housing and Urban Development ("HUD") and the U.S. Treasury Department released a joint study on predatory lending. Although the study did not set out a definition of "Predatory Lending", it did set out what the agencies consider abusive or unfair lending practices. The study is found at: http://www.hud.gov/library/bookshelf12/pressrel/treasrpt.pdf. Among the practices considered to be abusive are:

> The charging of excessive fees and "packing;"

> ➢ Lending without regard to the borrower's ability to repay; and

> ➢ Outright fraud and abuse.

4.      Each of these hallmarks is present in the instant transaction. These claims arise from a real estate loan transaction resulting in a mortgage upon Plaintiffs' home in Mobile County, Alabama. Specifically, Plaintiffs' claims against Defendant, First American Mortgage Trust A/K/A, D/B/A Nxtloan.Com, Corp, ("Nxtloan") arise under the federal Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. Since the fees were padded, several of them should have been included in the calculation of the "Finance Charge." Instead they were included in the "Amount Financed" resulting in an understatement of the Annual Percentage Rate ("APR"). This has resulted in an extended right of the Plaintiffs to cancel or rescind the loan.

5.      The Smiths assert claims against Nxtloan, and 1st Continental Mortgage, Inc., ("1st Continental") under the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2601 et seq. Plaintiffs were charged padded and duplicative fees and closing costs. The actual costs associated with the loan were never disclosed to Plaintiffs and Defendants are liable for damages for the failure to properly disclose those costs. RESPA claims are made against Nxtloan for the charging of unearned "discount points." Also, many of the fees charged incident to the federally related loan closing were padded and duplicative.

6.      Finally, Plaintiffs make negligence and fraud claims against M&T, Nxtloan and 1st Continental under state law.

7.      The claims asserted against M&T arise under recoupment and TILA assignee liability.

**THE PARTIES**

8.      Plaintiffs are both individuals of full age of majority and are resident citizens of the State of Alabama.

9.      1st Continental is a mortgage broker or "middleman." 1st Continental is a Florida corporation that does business in Mobile, Alabama.

10.     REO[1] acted as settlement agent for Nxtloan regarding the loan at issue. REO is a Pennsylvania corporation that does business in Mobile, Alabama.

11.     Nxtloan is engaged in the originating, holding and selling of federally related mortgage loans. Nxtloan does business in this district by making, holding and selling mortgages loans on real property within this district. Nxtloan is a Massachusetts corporation.

12.     M&T Bank ("M&T") is a Banking Corporation with its headquarters in Buffalo, New York. M&T purports to be an assignee of Plaintiffs' loan.

## FACTUAL ALLEGATIONS

13.     During February and March of 2008 Plaintiffs were shopping online for a mortgage loan.

14.     Eventually they were contacted by 1st Continental.

15.     At all times prior to the closing 1st Continental represented to Plaintiffs that it was a mortgage lender when in fact it was only a broker.

16.     Plaintiffs applied for a mortgage with 1st Continental and after a lengthy process the loan was scheduled to close early in July of 2008.

17.     The loan did not close at that time but was rescheduled for August 2008.

---

[1] Plaintiffs have released REO and have filed a motion to dismiss their claims against it that were in their initial complaint.

18.     1st Continental did not close or fund the loan but simply took Plaintiffs' loan application, charged them exorbitant broker and processing fees, and referred the loan to Nxtloan.

19.     Neither Nxtloan nor 1st Continental have a Mobile, Alabama office and, instead of using an attorney to close the loan at issue, an untrained notary public or signing agent was hired by Defendants.

20.     On or about August 4th 2008, the Smiths were told to meet one Carol Schultz, a notary public, at the Hardies restaurant located on Moffett Road, Mobile Alabama. While reviewing the documents Plaintiffs realized that, the loan was not on the terms that they had asked for and that they were being charged exorbitant fees and closing costs. At this point, Plaintiffs told the notary that they were not going to close the loan and 1st Continental was called. Louis, a loan officer at 1st Continental, assured that Plaintiffs every thing would be "straightened out" the next day and that they should go ahead and sign the documents.

21.     Relying on the representations of 1st Continental, that the loan would be corrected, Plaintiffs completed the transaction.

22.     The next day and thereafter Louis avoided Plaintiffs' calls and the loan was never "straightened out" as promised.

23.     Plaintiffs granted Nxtloan a non-purchase security interest in real estate that is used by them as their principal dwelling.

24.     The loan was closed by REO, a settlement agent hired by and whose use was required by Nxtloan.

25.     Nxtloan was required to provide Plaintiffs certain disclosures pursuant to the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq., (TILA) and its implementing regulations (Reg. Z).

26.     Under TILA and Reg. Z, Nxtloan was required to clearly and conspicuously disclose the "amount financed" and the "finance charge," among other things, in connection with the loan.

27.     Various fees charged incident to the extension of credit to Plaintiffs were illegal, unearned or padded and therefore not *bona fide* or reasonable as those terms are used in 12 C.F.R. § 226.4(c)(7).

28.     The disclosed APR was 7.507%, as calculated with an amount financed disclosed to be $242,832.43 and a disclosed pre-paid finance charge of $12,693.57.

29.     Plaintiffs' disclosures reflect that they paid over $18,000.00 in closing costs associated with their loan. These costs included at least the following fees, all of which were required by the lender and paid at closing:

| | |
|---|---|
| Origination Fee to First American Mortgage Trust | $2,517.50 |
| Discount Fee to First American Mortgage Trust | $638.82 |
| Administration Fee to Nxtlaon.com Corp. | $250.00 |
| Document Preparation to Document Systems, Inc. | $29.00 |
| Broker Fee to 1st Continental | $3,832.89 |
| Interest | $1,113.11 |
| Private Mortgage Insurance Fee to HUD | $3,776.25 |
| Settlement Fee or Closing Fee to REO | $600.00 |
| Courier Fee to REO | $120.00 |
| Bankruptcy Search to REO | $100.00 |
| Chain of Title Fee to REO | $100.00 |
| Wire Fee to REO | $95.00 |
| Storage Fee to REO | $65.00 |
| Notary to REO | $375.00 |
| Recording Service Fee to REO | $138.00 |
| Abstract to REO | $395.00 |
| Title Exam to REO | $395.00 |
| Title Ins Binder to REO | $395.00 |

30.     Under TILA and Reg. Z, "real estate related fees" may be *excluded* from the calculation of the finance charge only if such charges are *bona fide* and reasonable. Otherwise, they are finance charges and must be disclosed as such. See Reg. Z, § 226.4(c)(7).

31.     The TILA disclosure given the plaintiffs shows an "Amount Financed" of $242,832.43, a finance charge of $359,430.94 and an APR of 7.507%.

32.     On the face of the documents the following fees should have been calculated as part of the finance charge because they were required by the lender and are not otherwise excludable:

| | | |
|---|---|---|
| Courier Fee | | $120.00 |
| Bankruptcy Search | | $100.00 |
| Chain of Title Fee | | $100.00 |
| Wire Fee | | $95.00 |
| Storage Fee | | $65.00 |
| | Total | $480.00 |

33.     Furthermore at least the padded portion[2] of these fees are also finance charges:

| | | |
|---|---|---|
| Notary | | $375.00 |
| Recording Service Fee | | $138.00 |
| Abstract | | $395.00 |
| Title Exam | | $395.00 |
| Title Ins Binder | | $395.00 |
| | Total | $1,698.00 |

34.     The Finance Charge herein is understated, on the face of the documents, $480.00 plus an amount to be determined represented by the padded fees above.

35.     The understatement of the Finance Charge results in an understatement of the APR and an overstatement of the Amount Financed.

36.     REO, the settlement agent, charged a "Settlement fee" of $600.00.

---

[2] Plaintiffs believe and argue that Regulation Z requires that the entire charge should be included in the finance charge calculation.

37.     REO was fully compensated for every service it arranged or performed by its "Settlement Fee."

38.     Despite having already been fully compensated, REO padded and marked up fees for work performed by others. For example, REO charged $395 for a "title exam." REO did not perform this service. This service was performed by others for, on information and belief, less than $100.00. REO, without performing any further compensable service, then marked-up or padded the charge.

39.     Additionally REO, without performing any additional service padded and marked-up the fees it charged for "bankruptcy search," "chain of title," courier, "wire fee," "recording" and "Notary Fees."

40.     Plaintiffs were charged $375.00 for "notary fees" when the notary, one Carol Schultz, was only paid $115.00.

41.     REO performed no compensable service at all for "title examination."[3]

42.     REO retained an unearned charge in addition to the amount it actually paid for "document preparation."

43.     Without performing any service, REO padded the charge for "Recording Fee." Plaintiffs' settlement statement reflects a charge of $138.00 for recording and the actual charge by the probate court was only $40.50.

44.     Several other fees enumerated above were duplicative, unearned[4], marked-up and padded in violation of RESPA and as such they are fees for other than services actually rendered.

---

[3] REO also made a duplicative charge for "chain of title."
[4] The term "unearned" as used herein means that no service was provided.

45.     The marked-up, duplicative and unearned fees include the "Loan Discount." Nxtloan charged this fee, of $638.82, although Plaintiffs received no discount or service in exchange for this fee.

46.     Plaintiffs were charged for origination a fee of $3,832.89 by the broker, 1st Continental. Nxtloan also charged an origination fee of $2,517.50. These fees are duplicative and Plaintiffs have been charged twice for the same service.

47.     In addition to the above fees on information and belief, 1st Continental collected a yield spread premium ("YSP")[5] from Nxtloan.

48.     This YSP was actually a kickback.

49.     Nxtloan paid and 1st Continental received an YSP (kickback) in connection with the referral of Plaintiffs' loan to Nxtloan at a rate that "above par."

50.     In other words, Nxtloan paid 1st Continental a kickback for selling Plaintiffs a loan that was above the best rate available to them.

51.     Unbeknownst to Plaintiffs, 1st Continental and Nxtloan had entered into a joint venture whereby Nxtloan would pay kickbacks to 1st Continental for the referral of above par loans.

52.     The payment of a kickback by Nxtloan to 1st Continental constitutes intentional interference with Plaintiffs' contract with 1st Continental.

53.     Plaintiffs would not have entered into the loan transaction if they had known the true nature of the arrangements between Nxtloan and 1st Continental.

54.     Charges for fees associated with the recording of mortgages and deeds may be excluded from the computation of finance charge only to the extent actually paid to the

---

[5] A yield spread premium ("YSP") is "a payment made by a [mortgage] lender to a [mortgage] broker in exchange for that broker's delivering a mortgage that is above the 'par rate' being offered by the lender." See *Heimmermann v. First Union Mortgage Corp.*, 305 F.3d 1257, 1259 (11th Cir.2002).

governmental entity. If those charges exceed the amount actually paid to record the mortgage, then they are finance charges and must be disclosed as such pursuant to 15 U.S.C. § 1605(d).

55.     Assuming any of the charge of $138.00[6] imposed upon the Plaintiffs as a "recording fee" actually paid to a recording office for recording, the fee was padded and exceeded the amount charged by the probate office for the recording. Because the recording fee charge exceeds the fee actually paid to record the mortgage, it was a finance charge and should have been disclosed as such.

56.     The padded and marked-up charges were charged incident to the extension of the credit and were not *bona fide* or reasonable because they were marked up or padded in violation of RESPA. These fees should have been *excluded* from the calculation of the "Amount Financed" and *included* in the calculation of the "Finance Charge."

57.     The TILA disclosures provided to the Plaintiffs in connection with their loan understated the finance charge because of the misallocation of charges incident to the extension of the credit.

58.     This misallocation of items that should have been *included* in the finance charge also resulted in an understatement of the Annual Percentage Rate ("APR").

59.     Because of the understatement of the finance charge and/or the APR Plaintiffs have retained an extended right to rescind the transaction pursuant to 15 U.S.C. § 1635.

60.     Defendants collected unearned and duplicative fees in connection with the instant transaction including but not limited to the fees enumerated above.

61.     At all times material herein, 1st Continental represented to Plaintiffs that it would represent their interest and get them mortgage loan on the best terms available.

62.     Those representations were false and fraudulent.

_____

[6] The HUD-1 settlement statement does not disclose to whom this fee was paid.

63.     Plaintiffs relied on these representations and the representations contained in the disclosures when they entered into the mortgage transaction at issue.

64.     Plaintiffs relied on Defendants' disclosures and representations that the fees that were charged were proper, legal, *bona fide* and reasonable.

65.     Defendants suppressed the facts that fees were illegal, padded and marked up.

66.     Plaintiffs would not have entered into the loan transaction they had known that many of the fees that they were charged were illegal, padded and/or duplicative.

67.     As a part of the transaction, certain of the Plaintiffs' debts were to be paid off and consolidated. Among the debts to be paid off were the following:

> ➢  J & J Furniture          $3,215.90;
>
> ➢  Merrick Bank            $1,593.00; and
>
> ➢  Applied Bank            $1,424.00.

68.     The checks of REO that were to pay these debts were returned by the bank they were drawn on.

69.      Although Plaintiffs were finally sent funds to pay the debt to Applied Bank, they still owe the other two debts.

70.     Plaintiffs incurred bad check charges, late charges and negative credit reporting as a result of these checks being returned.

71.     Defendants also miscalculated the payoff on Plaintiffs' prior loan with Chase and Plaintiffs had to pay Chase an additional sum in accrued interest. The exact amount is unknown at this time but is on information and belief over $500.00.

72.     At the time of the alleged default on the mortgage and at the time the foreclosure was initiated  M&T was not the real party in interest because it did not possess the right to enforce the remedies allowed by any default.

73.     On information and belief, at all times relevant herein, Plaintiffs' loan had been "securitized" or sold to investors as part of a "mortgage pool" or other investment vehicle.

74.     M&T failed to comply with applicable mortgage servicing regulations, guidelines and agreements and conditions precedent to acceleration and the attempted foreclosure was therefore initiated wrongfully.

75.     M&T, as the servicer of the loan, failed to offer pre-foreclosure loss mitigation as required by the Pooling and Servicing Agreement or a PSA that covers the loan and the foreclosure was therefore initiated wrongfully.

76.     At the time of the closing of the loan, Plaintiffs executed a mortgage to "Mortgage Electronic Registration Systems, Inc. acting solely as nominee for NXTLOAN.COM, CORP."

77.     At all times relevant herein, the note and right to collect the monies due thereunder did not belong to MERS or M&T but instead the loan was securitized and those rights belonged to investors or a trustee.

78.     MERS operates a private system designed to facilitate mortgage transfers and avoid government recording fees.

79.     Mortgages, such as the one at issue herein, are registered with the system and are assigned a "Mortgage Identification Number" (MIN) which allows the mortgage to be tracked when it is assigned to a trust or pool of other mortgages.

80.     MERS is not and has never been the holder of the note or the "person, or the personal representative of any person who, by assignment or otherwise, [is] entitled to the money thus secured," as required by Alabama Code § 35-10-1.

81.     Since MERS was not the holder of the note or the entity entitled to collect from Plaintiffs, it cannot convey that right or power to M&T.

82.     MERS and M&T are engaged in and have engaged in a pattern and practice of falsifying assignments of mortgages for the purpose of enabling joint ventures to foreclose on property of unsuspecting or unknowing consumers, such as Plaintiffs, illegally and without legal standing or power to foreclose.

83.     MERS and M&T are engaged in a joint venture, as defined by Alabama law, and as such are liable jointly and severally for the actions of all members of the joint venture.

84.     Furthermore, at all times relevant herein, M&T lacked standing or power to foreclose because the alleged assignment from MERS to M&T is defective, void, or otherwise unenforceable as to the security instrument in question.

85.     As a result of the actions of defendants to this action, Plaintiffs have suffered financial loss, damage to their reputation and great mental anguish.

## COUNT I

## TILA VIOLATIONS

86.     Plaintiffs reallege all the relevant preceding allegations as if set out here in full.

87.     This count asserts claims against Defendant Nxtloan for TILA violations.

88.     Nxtloan is a "creditor" within the meaning of TILA, 15 U.S.C. § 1602(f).

89.     The disclosures issued by Nxtloan with respect to the Plaintiffs' loan violated the requirements of TILA and Reg. Z in at least the following ways:

(A)     By failing to include in the finance charge certain charges listed above and payable by Plaintiffs incident to the extension of credit as required by 15 U.S.C. §1605 and Reg. Z § 226.18.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants Nxtloan and, pursuant to 15 U.S.C. § 1640(a), award the following relief:

A)     Statutory damages as provided in 15 U.S.C. §1640(a);

B)     Actual damages in an amount to be determined at trial;

C)     An award of reasonable attorney fee and costs; and

D)     Such other relief at law or equity as this Court may deem just and proper.

## COUNT II

## RESCISSION

90.     Plaintiffs reallege all the relevant preceding allegations as if set out here in full.

91.     This is a count against Nxtloan and M&T only.

92.     M&T is liable for the TILA violations of Nxtloan pursuant to 15 U.S.C. §§ 1641(a) and (c). M&T is also liable in recoupment because it has filed a counter claim herein.

93.     Since M&T has commenced a foreclosure of Plaintiffs' home the tolerance for the disclosure of the finance charge drops to $35.00 pursuant to 15 U.S.C. § 1635(i)(2).

94.     The finance charge was understated by at least $35.00 as stated above and because, on information and belief, the fees for abstract and title examination, notary, were padded and therefore not "*bona fide* and reasonable" as required by 12 C.F.R. § 226.4(c)(7) for exclusion from the finance charge calculation.

95.     As a result of Nxtloan and M&T's failure to provide the disclosures required by TILA, Plaintiffs retained their right to cancel the transaction.

96.     By letter dated June 8th 2009 Plaintiffs, through their attorney, notified Nxtloan and M&T of their election to rescind the loan.

97.     Despite having received notice of Plaintiffs' election to cancel the transaction, Nxtloan and M&T failed to take any steps necessary or appropriate to reflect the termination of the security interest created in connection with Plaintiffs' loan.

98.     The failure to take such steps is a violation of TILA § 1635(b) and contrary to that provision's clear edict stating that said security interest is void upon delivery of the notice of the election to cancel.

99.     The failure by Nxtloan and M&T to recognize the rescission and comply with § 1635(b) is a violation of § 1635(g) entitling Plaintiffs to statutory damages.

100.    Plaintiffs have properly and effectively cancelled and rescinded the loan in accordance with the rights and procedure set out in 15 U.S.C. § 1635.

101.    Nxtloan and M&T have violated TILA, with respect to the loan, in at least the following ways:

(A)     By failing to take actions after rescission as required by 15 U.S.C. § 1635(b), including the steps necessary or appropriate to reflect the termination of the security interest and returning all money paid by Plaintiffs in connection with the loan.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants and in their favor, and pursuant to 15 U.S.C. § 1640(a), award the following relief:

A)      Statutory damages as provided in 15 U.S.C. § 1635(g);

B)      Actual damages in an amount to be determined at trial;

C)      Rescission of the loan, including a declaration that Plaintiffs are not liable for any finance charges or other charges imposed;

D)      A declaration that the security interest in Plaintiffs' property created under the mortgage transaction is void, and an order requiring Defendant to release such security interest;

E)      Return of any money or property given by the Plaintiffs to anyone, including the Defendants, in connection with the transaction;

F)      A declaration that Plaintiffs have no duty to tender the loan proceeds to Defendants, but in the alternative, if tender is required, a determination of the amount of tender obligation in light of all of the Plaintiffs' claims, and an order requiring Defendants to accept tender on reasonable terms and over a reasonable period of time;

G)      An award of reasonable attorney fees and costs; and

H)      Such other relief at law or equity as this Court may deem just and proper.

## COUNT III

## RESPA VIOLATIONS OF NXTLOAN AND 1ST CONTINENTAL

102.    This is a count against Nxtloan and 1st Continental for paying or receiving unearned fees.

103.    Plaintiffs reallege all the relevant preceding allegations referenced as if set out here in full.

104.    Plaintiffs' loan is a federally related mortgage loan within the meaning of RESPA.

105.    Nxtloan and 1st Continental violated RESPA by charging, splitting and/or paying unearned duplicative fees.

106.    Plaintiffs were charged $3,832.89 by 1st Continental for originating the loan and $2,517.05 by Nxtloan for the same service.

107.    Plaintiffs were charged a total of $6,350.39 ($2,517.05 + $3,832.89 = $6,350.39) for just the origination of the loan.

108.    In the alternative Nxtloan and 1st Continental split the origination fee paid by Plaintiffs.

109.    Additionally Nxtloan charged Plaintiffs $638.82 for a "loan discount" although no discount was provided.

110.    Both 1st Continental and Nxtloan charged unearned and duplicative fees or fees for other than services rendered.

111.    Pursuant to 12 U.S.C. §2607(d)(2), Plaintiffs are entitled to recover, and they hereby  seek to collect, from the defendants an amount equal to three times the amount of any and all charges for unearned fees and all other amounts or damages allowed to be recovered by RESPA.

WHEREFORE, Plaintiffs demand judgment against 1st Continental and Nxtloan for an amount equal to three times the amount of any and all unearned charges plus attorney's fees, costs and for such other relief and award to which Plaintiffs may be entitled, or as determined just and appropriate by this court.

## COUNT IV

## FRAUD AND PREDATORY LENDING

112.   Plaintiffs reallege all the relevant preceding allegations by reference as if set out here in full.

113.   As stated above, prior to and at the closing of the instant transaction, Nxtloan and 1st Continental misrepresented and suppressed material facts in order to induce Plaintiffs to enter into the instant transaction.

114.   Among the materials facts misrepresented and or suppressed were:

   a.   The fact that 1st Continental was not a mortgage lender;

   b.   The terms of the loan that was to be presented at closing;

   c.   The fact that 1st Continental was not going to correct the loan terms;

   d.   The fact that REO marked-up and padded the fees enumerated above;

   e.   The fact that REO did not perform many of the services that it charged for;

   f.   The fact that the disclosed APR and finance charge were understated;

   g.   The fact that Plaintiffs received no discount for the payment of "discount points";

   h.   The fact that, as stated above, many of the settlement charges were illegal, padded and marked up; and

   i.   The fact that 1st Continental paid a kickback of Yield Spread Premium or kickback to Nxtloan.

115.   Plaintiffs relied on the false representations and entered into the loan agreement.

116.   At all relevant times 1st Continental was the agent of Nxtloan and the two maintained a joint venture in which they defrauded Plaintiffs and others.

117.   The fraud was intentional or occurred because of the negligent training or supervision of employees by 1st Continental and/or Nxtloan.

118.    As a result of the conduct of 1st Continental and Nxtloan Plaintiffs suffered damages.

Wherefore Plaintiffs claim actual and punitive damages of defendants.

## COUNT V

## NEGLIGENCE

119.    Plaintiffs reallege all the relevant preceding allegations by reference as if set out here in full.

120.    The breach of duty and statutory violations complained of herein occurred because of the negligence of the applicable defendants or because of the negligent training or supervision of their servants and agents.

121.    As a direct of these defendants' negligence Plaintiffs have suffered money damages, damages to their credit, reputation and mental anguish. The relevant allegations stated in the above paragraphs are incorporated as if fully asserted herein.

WHEREFORE, Plaintiffs demand actual and punitive damages, costs and for such other relief and award to which Plaintiffs may be entitled, or as determined just and appropriate by this court.

## COUNT SIX

## ABUSE OF PROCESS

122.    Plaintiffs reallege all the relevant preceding allegations by reference as if set out here in full.

123.    Although M&T was on notice at all pertinent times that the Plaintiffs had rescinded their mortgage loan it filed a counterclaim in the instant action in an effort to coerce Plaintiffs  into acquiescing to the wrongful foreclosure and giving up their home.

124.    Furthermore, M&T is not the proper party to bring such a counterclaim because it is not the assignee of the note since the loan was "securitized" as stated above.

125.    Such conduct constitutes an abuse of process.

126.    As the proximate cause of M&T's abuse of process, Plaintiffs suffered injuries and damages, also, reasonable attorney's fees incurred in defending the counterclaim.

127.    Plaintiffs claim punitive damages of the counter/plaintiff-defendant, M&T.

WHEREFORE, Plaintiffs demand actual and punitive damages, costs and for such other relief and award to which Plaintiffs may be entitled, or as determined just and appropriate by this court.

s/  Earl P. Underwood, Jr.
EARL P. UNDERWOOD, JR. (UNDEE6591)
Attorney for Plaintiffs
PO Box 969
21 South Section St.
Fairhope, Alabama  36533
Telephone: 251.990.5558
Facsimile:  251.990.0626
E-mail: epunderwood@alalaw.com


**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**


s/  Earl P. Underwood, Jr.
Earl P. Underwood, Jr.

CERTIFICATE OF SERVICE

      I hereby certify that on November 11th 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:


Gregory S. Ritchey
Ritchey Simpson & Glick, PLLC
The Mountain Brook Center
2700 Highway 280 Suite 203 W
Birmingham, AL 35223-2468

Harlan F. Winn, III
Battle, Fleenor Green Winn & Clemmer, LLP
The Financial Center
Ste 1150,  505 North 20th St.
Birmingham, AL 35203


                                     /s/ Earl P. Underwood, Jr.
                                     Earl P. Underwood, Jr.